## HAJCIAR v CRAWFORD AND COMPANY

Docket No. 75158. Submitted December 19, 1984, at Detroit.—Decided February 22, 1985.

Plaintiff, A. Pauline Hajciar, for herself and as personal representative of the estate of Michael Hajciar, deceased, brought an action against Crawford and Company and Carriers Insurance Company. The defendants provided workers' compensation insurance to Michael Hajciar's former employer. They paid workers' compensation benefits to Michael Hajciar when he became totally disabled as the result of an accident which occurred in the course of his employment. The benefits were terminated in 1982, and plaintiff alleged that the termination of benefits, in breach of the workers' compensation contract, resulted in extreme mental anguish and other problems which resulted in Michael's death and that the defendants' breach of contract also caused plaintiff extreme mental anguish. The Wayne Circuit Court, Richard C. Kaufman, J., granted summary judgment to the defendants, holding that no damages for mental anguish and pain and suffering were recoverable for the alleged breach of the contract. Plaintiff appealed. *Held:*

1. The workers' compensation insurance contract was a commercial contract, not one which can be considered to be personal in nature. Damages for mental distress are not recoverable for the breach of a commercial insurance contract.

2. Plaintiff's complaint for damages is related solely to the alleged breach. She did not allege conduct of such an extreme degree as to be characterized as outrageous and atrocious, and thus did not allege a cause of action for the intentional infliction of emotional distress.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 22 Am Jur 2d, Damages § 56 *et seq.*

[2, 3, 4] 22 Am Jur 2d, Damages § 195 *et seq.*
    38 Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 33, 34.

[5] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance § 4 *et seq.*
    Modern status of intentional infliction of mental distress as independent tort; "outrage." 38 ALR4th 998.

1. Contracts — Breach of Contract — Damages.

The general rule in breach of contract actions is that damages recoverable for a breach of contract are those arising naturally from the breach or those which were within the parties' contemplation at the time of contracting.

2. Contracts — Breach of Contract — Damages — Mental Distress — Commercial Contracts.

Mental distress damages may not be awarded in actions for breach of a commercial contract absent an allegation and proof of tortious conduct existing independent of the breach.

3. Contracts — Breach of Contract — Damages — Mental Distress — Personal Contracts.

Mental distress damages are recoverable for breaches of contract of a personal nature, as distinguished from contracts which are entered into for a pecuniary or commercial purpose, because injuries to the emotions are foreseeable as flowing naturally from the breach.

4. Contracts — Breach of Contract — Damages — Workers' Compensation Insurance.

Damages for mental distress are not recoverable for breach of a contract of workers' compensation insurance.

5. Torts — Intentional Infliction of Emotional Distress.

The tort of intentional infliction of emotional distress is recognized as a separate and distinct cause of action as an aggravating element of damages; a plaintiff alleging such a cause of action must allege conduct of such an extreme degree as to be characterized as outrageous and atrocious.

*Provizer, Eisenberg, Lichtenstein & Pearlman, P.C.* (by *Stephen B. Simon*), for plaintiff.

*Draugelis, Ashton, Scully & Haynes* (by *John A. Ashton*), for defendants.

Before: V. J. Brennan, P.J., and Cynar and C. W. Simon, Jr.,* JJ.

Per Curiam. As personal representative of the estate of Michael Hajciar, and in her own capacity

* Circuit judge, sitting on the Court of Appeals by assignment.

as the spouse of the decedent, A. Pauline Hajciar appeals as of right from an order entered on August 25, 1983, which granted defendant's motion for summary judgment, GCR 1963, 117.2(1), and dismissed plaintiff's complaint.

The four-count complaint alleged that on or about December 5, 1977, while working in the course of employment with Gateway Transportation, Michael Hajciar slipped and fell injuring his left leg. This injury culminated in the amputation of his leg and Michael Hajciar became totally disabled.

Pursuant to a contract of insurance entered into between Gateway Transportation and the defendants, worker's compensation benefits were paid by defendants until January 22, 1982, when the payments were terminated, allegedly without cause.

As representative of the estate of the decedent, plaintiff alleged that the express purpose of the termination was to coerce Michael Hajciar into accepting a lump sum payment which he had previously refused. It was alleged that, as a result of the termination of benefits, Michael Hajciar became depressed and despondent. It was claimed that Michael Hajciar's depression and despondency aggravated and exacerbated his cardiovascular problems, resulting in his untimely death on February 10, 1982, and that the defendants breached their contract of insurance by terminating the disability payments without cause. Plaintiff alleged that as a direct and proximate cause of this breach Michael Hajciar suffered pain, humiliation, mental anguish and death.

In her individual capacity, plaintiff claimed that the contract breach also resulted in the loss of her husband's love, support, affection and consortium,

and, as a result, plaintiff suffered extreme mental anguish.

In Count III, it was alleged that the defendants owed a duty to exercise reasonable and ordinary care in the administration and payment of benefits and that such duty was recklessly breached. The complaint contained the following allegations of negligence:

"a) Failing to take into account the seriousness of the decedent's injury;

"b) Failing to take into account the affect [sic] of their actions on the plaintiff, which actions plaintiff contends were unlawful and without cause.

"c) Failing to take reasonable and prudent steps to prevent further injury and suffering on [the] part of the plaintiff's decedent."

The direct results of these negligent acts were the despondency and depression which contributed to Michael Hajciar's humiliation, anguish and untimely death, and the mental anguish suffered by plaintiff as wife of the decedent.

Count IV of the complaint alleged that the defendants intentionally and wrongfully terminated the payments with knowledge of the consequences that would result.

Plaintiff first claims that the trial court erred in dismissing the complaint on the grounds that *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980), *reh den* 409 Mich 1116 (1980), controlled and that, as a matter of law, plaintiff failed to state a claim for intentional infliction of emotional distress because the allegations contained in the complaint stemmed solely from the alleged breach of the insurance contract.

In *Partrich v Muscat,* 84 Mich App 724, 729-730; 270 NW2d 506 (1978), this Court summarized the

test for reviewing summary judgments under GCR 1963, 117.2(1).

"The motion is to be tested by the pleadings alone. *Todd v Biglow,* 51 Mich App 346; 214 NW2d 733 (1974), *lv den,* 391 Mich 816 (1974). The motion tests the legal basis of the complaint, not whether it can be factually supported. *Borman's, Inc v Lake State Development Co,* 60 Mich App 175; 230 NW2d 363 (1975). The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged. Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion under this subrule should be denied. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972)."

The issue for our determination is whether the plaintiff pled an enforceable claim for intentional infliction of emotional distress which was unrelated to the breach of the insurance contract or whether the plaintiff was in actuality requesting damages for mental anguish caused by the breach of the insurance contract. Plaintiff argues that she pled conduct on the defendants' part which supported a cause of action for intentional infliction of emotional distress, independent of the breach of contract.

In *Butt v Detroit Automobile Inter-Ins Exchange,* 129 Mich App 211; 341 NW2d 474 (1983), this Court discussed the basic law set forth in *Kewin, supra,* on damages recoverable in breach of contract actions:

"The general rule in breach of contract actions is that damages recoverable for a breach of contract are those arising naturally from the breach or those which were within the parties' contemplation at the time of contracting. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980); *Hadley v Baxen-*

*dale,* 9 Exch 341; 156 Eng Rep 145 (1854). Damages for mental (emotional) distress are not normally recoverable in breach of contract actions. *Kewin, supra.* Furthermore, absent allegation and proof of tortious conduct existing independent of the breach, mental distress damages may not be awarded in actions for breach of a commercial contract. *Kewin,* pp 420-421; *Van Marter v American Fidelity Fire Ins Co,* 114 Mich App 171, 185; 318 NW2d 679 (1982).

"An exception to the general nonrecovery rule in breach of contract actions was announced in *Stewart v Rudner,* 349 Mich 459; 84 NW2d 816 (1957). Mental distress damages are recoverable for breaches of contract of a personal nature, as distinguished from contracts which are entered into for a pecuniary or commercial purpose, because injuries to the emotions are foreseeable as flowing naturally from the breach. In *Kewin,* the Supreme Court recognized the *Stewart* exception, but found it inapplicable to the contract at issue there. *Kewin* involved breach of an insurance contract for disability income protection. Insurance contracts, as agreements to pay a sum of money upon the occurrence of a specified event, are commercial in nature. The damage incurred upon breach of such an agreement is capable of adequate compensation by reference to the terms of the contract. The Court recognized that while breach of an insurance contract, as with almost any agreement, results in some annoyance and vexation, recovery for those consequences is generally not allowed absent evidence that they were within the contemplation of the parties at the time the contract was made.

"Panels of this Court have applied *Kewin* and held that damages for mental distress are not recoverable for breach of an automobile no-fault insurance policy, *Van Marter, supra,* p 183; *Liddell v Detroit Automobile Inter-Ins Exchange,* 102 Mich App 636, 649; 302 NW2d 260 (1981), or breach of a professional liability insurance policy, *Stein v Continental Casualty Co,* 110 Mich App 410, 422-424; 313 NW2d 299 (1981)." 129 Mich App 216-217.

Although the instant case involves the allegedly

wrongful termination of worker's disability benefits, and the insurance policy was issued to the decedent's employer rather than the employee, we believe that the principles discussed in *Kewin* apply to the instant case. Furthermore, although plaintiffs raise a novel argument, we do not believe that a contract involving worker's compensation insurance is one which can be considered to be a contract of a personal nature. Rather, it is an insurance contract, and commercial in nature.

In our opinion, plaintiff's request for damages for mental anguish and suffering are solely related to the breach of contract claim. Plaintiff argues, however, that she pled a cause of action for intentional infliction of emotional distress and that the trial court should have allowed her to prove the allegations rather than dismissing the complaint.

This Court does recognize the tort of intentional infliction of emotional distress as a distinct and separate cause of action as an aggravating element of damages.[1] *Rosenberg v Rosenberg Brothers Special Account,* 134 Mich App 342, 350; 351 NW2d

---

[1] The tort of intentional infliction of emotional distress is described in *Holmes v Allstate Ins Co,* 119 Mich App 710, 714-715; 326 NW2d 616 (1982):

"The Court has explicitly adopted the definition found in the Restatement Torts, 2d, § 46, pp 71-72, which provides:

"'(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. * * *'

"See *Ross v Burns,* [612 F2d 271 (CA 6, 1980)] *supra,* p 273; *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 390; 239 NW2d 380 (1976); *Frishett v State Farm Mutual Automobile Ins Co,* 3 Mich App 688, 692; 143 NW2d 612 (1966), *lv den* 378 Mich 733 (1966).

"As explained in the Restatement, § 46, comment d, p 73:

" 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character,

563 (1984), citing *Holmes v Allstate Ins Co,* 119
Mich App 710, 714; 326 NW2d 616 (1982). See also
*Ferrell v Vic Tanny International, Inc,* 137 Mich
App 238, 245; 357 NW2d 669 (1984); *Ledl v Quik
Pik Food Stores, Inc,* 133 Mich App 583, 590; 349
NW2d 529 (1984); *Ledsinger v Burmeister,* 114
Mich App 12; 318 NW2d 558 (1982); *Warren v
June's Mobile Home Village & Sales, Inc,* 66 Mich
App 386, 390; 239 NW2d 380 (1976).

Again, our examination of plaintiff's allegations
and the pertinent case law concerning this tort
indicates that plaintiff has not alleged conduct of
such an extreme degree as to be characterized as
outrageous and atrocious. Thus, the allegations did
not reach the threshold requirement necessary to
sustain a cause of action for this intentional tort.
Therefore, the trial court did not err in its dis-
missal of plaintiff's complaint under GCR 1963,
117.2(1).

Affirmed. We retain no further jurisdiction.

and so extreme in degree, as to go beyond all possible bounds of
decency, and to be regarded as atrocious, and utterly intolerable in a
civilized community. Generally, the case is one in which the recita-
tion of the facts to an average member of the community would
arouse his resentment against the actor, and lead him to exclaim,
'Outrageous!'

" 'The liability clearly does not extend to mere insults, indignities,
threats, annoyances, petty oppressions, or other trivialities.' *Warren,
supra,* pp 390-391.

"In defining the types of situations where these rules may be applied,
the *Warren* Court explained:

" 'The extreme and outrageous character of a defendant's conduct
may arise in a number of situations. It may occur by virtue of an
abuse by defendant of a relationship which puts him in a position of
actual or apparent authority over plaintiff or gives defendant power
to affect plaintiff's interests. The landlord-tenant relationship is one
such situation. The tort may arise where defendant acts notwith-
standing the knowledge that plaintiff is peculiarly susceptible to
emotional distress because of defendant's actions. However, conduct
may be privileged under some circumstances. For example, an actor is
not liable "where he has done no more than to insist upon his legal
rights in a permissible way, even though he is well aware that such
insistence is certain to cause emotional distress". Restatements, *su-
pra,* § 46, comment g, p 76.' *Warren, supra,* p 391."