LISECKI v TACO BELL RESTAURANTS, INC

Docket No. 82864. Submitted December 12, 1985, at Detroit.—Decided
    April 9, 1986. Leave to appeal denied, 426 Mich —.

  Donald Lisecki, a maintenance supervisor for Taco Bell Restau-
    rants, Inc., injured his right knee during the course of his
    employment. He received workers' compensation benefits for
    approximately five months, after which he returned to work.
    Upon his return, his supervisor informed him that he was
    being terminated from his employment and that he would no
    longer receive workers' compensation benefits. Lisecki filed a
    petition with the Bureau of Workers' Disability Compensation,
    seeking a restoration of benefits. He was found to be entitled to
    an open award of benefits. Taco Bell appealed that decision to
    the Workers' Compensation Appeal Board. Lisecki and his wife,
    Jeannette, subsequently filed a complaint in Wayne Circuit
    Court alleging that Taco Bell Restaurants, Inc., and others
    acted in collusion to wrongfully, wilfully, and intentionally
    deprive Donald Lisecki of workers' compensation benefits and
    that, as a result, plaintiffs suffered damages such as mental
    anguish and emotional distress. Defendants moved for sum-
    mary judgment, which was denied, Michael J. Connor, J. Defen-
    dants appeal by leave granted. *Held:*

    The trial court's denial of defendants' motion for summary
  judgment is reversed. Plaintiff's allegation that compensation
  benefits were wrongfully terminated by the defendants in order
  to further some ulterior motive of the defendants rather than
  due to plaintiff's return to his pre-injury wage-earning capacity
  cannot support a cause of action for intentional infliction of
  emotional distress. Such conduct, even if true, cannot be char-
  acterized as outrageous and atrocious, which is necessary for a
  claim of intentional infliction of emotional distress. Further-
  more, an adequate remedy for the defendants' termination of
  benefits was available to, and exercised by, plaintiff Donald
  Lisecki, *i.e.,* his filing of a petition for hearing with the Bureau

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 52-64, 301, 302.
Recovery for discharge from employment in retaliation for filing
    workers' compensation claim. 32 ALR4th 1221.

of Workers' Disability Compensation, which resulted in an open award of benefits.

Reversed.

Torts — Intentional Infliction of Emotional Distress — Workers' Compensation — Termination of Benefits.

A plaintiff's allegation that workers' compensation benefits were wrongfully terminated by the plaintiff's employer and its workers' compensation carrier in order to further some ulterior motive of those parties rather than due to the plaintiff's return to his pre-injury wage-earning capacity cannot support a claim of intentional infliction of emotional distress; such conduct, even if true, cannot be characterized as outrageous and atrocious, which is necessary for a cause of action for intentional infliction of emotional distress.

*Dice, Sweeney, Sullivan, Feikens, Hurbis & Foster, P.C.* (by *Gregory J. Muller*), for plaintiffs.

*Franklin, Petrulis, Bigler, Berry & Johnston, P.C.* (by *Bruce W. Franklin*), for defendants.

Before: Danhof, C.J., and J. H. Gillis and M. Warshawsky,* JJ.

Per Curiam. Defendants filed this interlocutory appeal following the trial court's denial of their motion for summary judgment under GCR 1963, 117.2(1) and (3).

Donald Lisecki was employed by defendant Taco Bell Restaurants, Inc., as a maintenance supervisor until June of 1981, when he sustained an injury to his right knee during the course of the employment. Defendant National Union Fire Insurance Company, through its local servicing agent, Crawford & Company, voluntarily paid workers' compensation benefits to Lisecki. According to an affidavit submitted with the defendants' motion, benefits were discontinued on November 16, 1981, when a claims adjuster for Crawford &

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Company contacted the office of Lisecki's physician and was informed that Lisecki had been released to return to his full work responsibilities. Lisecki disputes this claim, alleging that he had been released to return only to restricted work. Further, Lisecki claims that he agreed to return to work only at the urging of a co-employee who informed him that he was needed to help train a new employee. In any event, upon his return to work, Lisecki was informed by his supervisor that he had been terminated from his employment. Lisecki further alleges that he was told by the supervisor that he would no longer receive workers' compensation benefits.

Lisecki filed a petition with the Bureau of Workers' Disability Compensation on November 9, 1981, seeking a restoration of benefits. He was found to be entitled to an open award of benefits on January 27, 1983. This award was appealed to the Workers' Compensation Appeal Board by the defendants, where the matter is presently pending.

On April 14, 1983, plaintiffs, Lisecki and his wife, Jeannette Lisecki, filed a complaint in the circuit court alleging that the defendants acted in collusion to "wrongfully, wilfully and intentionally" deprive Lisecki of workers' compensation benefits, as a result of which plaintiffs suffered damages such as mental anguish and emotional distress. Defendants moved for summary judgment, which motion was denied by an order dated November 30, 1984. We reverse.

Plaintiffs' claim against the defendants is essentially one for the intentional infliction of emotional distress. We note that this Court was presented with a similar situation in *Hajciar v Crawford & Co,* 142 Mich App 632; 369 NW2d 860 (1985). There, the plaintiff suffered an on-the-job injury which culminated in the amputation of his

left leg, rendering him totally disabled. Compensation benefits were paid for several years but were ultimately terminated, allegedly without cause. The plaintiff claimed that benefits were terminated in order to coerce him into redeeming his claim against the defendant for a lump sum payment, an offer he had previously refused. *Hajciar,* p 634.

The plaintiff filed suit in circuit court alleging, *inter alia,* that the defendant's actions constituted the intentional infliction of emotional distress. The circuit court granted the defendant's motion for summary judgment and this Court affirmed. In a footnote, p 638, the *Hajciar* Court referred to the following passage from *Holmes v Allstate Ins Co,* 119 Mich App 710; 326 NW2d 616 (1982), for a description of the tort of intentional infliction of emotional distress:

"The Court [of Appeals] has explicitly adopted the definition found in the Restatement Torts, 2d, § 46, pp 71-72, which provides:

" '(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. * * *'
See *Ross v Burns, supra,* p 273; *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 390; 239 NW2d 380 (1976); *Frishett v State Farm Mutual Automobile Ins Co,* 3 Mich App 688, 692; 143 NW2d 612 (1966), *lv den* 378 Mich 733 (1966).

"As explained in the Restatement, § 46, comment d, p 73:

" 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability

has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

" 'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' See *Warren, supra,* pp 390-391.

"In defining the types of situations where these rules may be applied, the *Warren* Court explained:

" 'The extreme and outrageous character of a defendant's conduct may arise in a number of situations. It may occur by virtue of an abuse by defendant of a relationship which puts him in a position of actual or apparent authority over plaintiff or gives defendant power to affect plaintiff's interests. The landlord-tenant relationship is one such situation. The tort may arise where defendant acts notwithstanding the knowledge that plaintiff is peculiarly susceptible to emotional distress because of defendant's actions. However, conduct may be privileged under some circumstances. For example, an actor is not liable "where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress". Restatement, supra, § 46, comment g, p 76.' *Warren, supra,* p 391." *Holmes,* pp 714-715.

Relying upon the above-quoted explanation of the tort, the *Hajciar* Court concluded that the plaintiff in that case "has not alleged conduct of such an extreme degree as to be characterized as outrageous and atrocious". 142 Mich App 639.

Our Supreme Court has also recently had occasion to consider an intentional infliction of emotional distress claim, although in connection with the denial of no-fault, rather than workers' compensation, benefits. In *Roberts v Auto-Owners Ins*

*Co,* 422 Mich 594; 374 NW2d 905 (1985), the plaintiffs alleged that the defendant insurance company's failure to provide a form for claiming replacement service benefits, their delay in responding to a claim for benefits, and the ultimate denial of benefits to which the plaintiffs were entitled constituted the extreme and outrageous conduct necessary to establish an intentional infliction of emotional distress claim. The Supreme Court disagreed, stating:

"While Auto-Owners' conduct is hardly praiseworthy, plaintiffs alleged no more than the failure by Auto-Owners to facilitate the filing of a replacement services claim, a delay of at most six months in responding to the claim as filed, and the denial of benefits owed. Such conduct may properly be considered unreasonable for purposes of assessing the statutory penalty for overdue payments as well as plaintiffs' attorney fees against Auto-Owners [citing MCL 500.3142(3); MSA 24.13142(3) and MCL 500.3148(1); MSA 24.13148(1)]. However, the record evidence falls 'far short of the conduct which is considered tortiously outrageous.' *[Butt v Detroit Automobile Inter-Ins Exchange,* 129 Mich App 211, 219; 341 NW2d 474 (1983)] There is no indication that Auto-Owners set out to harass these plaintiffs, nor does the evidence disclose a course of conduct that may fairly be characterized as 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community,' Restatement Torts, 2d, § 46, comment d, p 73. At most, the dilatory handling of plaintiffs' claim constitutes 'bad faith' justifying imposition of the statutory penalties set forth above, but for which this Court has held no separate cause of action can lie. See *[Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 423; 295 NW2d 50 (1980)]." 422 Mich 607-608.

We believe the conclusion reached in both *Hajc-*

*iar* and *Roberts* is appropriate in the case before us. The facts in *Hajciar* were essentially identical to those presented here, *i.e.,* an allegation by the plaintiff that compensation benefits were wrongfully terminated by the defendants in order to further some ulterior motive of the defendants rather than due to the plaintiff's return to his preinjury wage-earning capacity. While such an allegation, if in fact true, would call into serious question the business practices of the defendants, we agree with the *Hajciar* Court that such conduct simply cannot be characterized as outrageous and atrocious. An adequate remedy for the defendants' termination of benefits was available to and exercised by plaintiff Donald Lisecki, *i.e.,* his filing of a petition for hearing with the Bureau of Worker's Disability Compensation, which resulted in an open award of benefits. We do not believe the tort relied upon by plaintiff was intended to provide damages for this type of conduct.[1] Therefore, the trial court's denial of the defendants' motion for summary judgment is reversed.

Reversed.

---

[1] We note that plaintiffs rely mainly upon *Broaddus v Ferndale Fastener Division, Ring Screw Works,* 84 Mich App 593; 269 NW2d 689 (1978). However, that reliance is misplaced since *Broaddus* has no application to the facts of this case. In *Broaddus,* this Court held that a claim for intentional infliction of emotional distress is not barred by the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131). *Broaddus,* p 600. This holding is entirely correct since the plaintiff in *Broaddus,* as well as the plaintiffs here, did not seek to recover damages for a personal injury arising out of and in the course of his employment. Rather, he sought a recovery for nonphysical damages arising from the defendants' failure to provide workers' compensation benefits to which plaintiff was allegedly entitled. *Broaddus* did not hold that the failure to pay benefits under the circumstances presented there, or for that matter as presented in the case before us, enables the plaintiff to recover damages for the intentional infliction of emotional distress. Therefore, the case relied upon by plaintiffs in this appeal in fact has no application.