*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0257p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

PAUL BROWN, WILLIAM FANALY, CHARLES
THOMAS, GARY RIGGS, ROBERT ORLIKOWSKI, and
SCOTT WAY,

                    *Plaintiffs-Appellants,*

    *v.*

CASSENS TRANSPORT CO., CRAWFORD & COMPANY,
and DR. SAUL MARGULES,

                    *Defendants-Appellees.*

No. 05-2089

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-72316—Paul D. Borman, District Judge.

Argued: July 27, 2006

Decided and Filed: July 10, 2007

Before: MOORE and GIBBONS, Circuit Judges; ACKERMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Marshall D. Lasser, LAW OFFICE OF MARSHALL LASSER, Southfield, Michigan, for Appellants. Janet E. Lanyon, DEAN & FULKERSON, Troy, Michigan, Joan N. Pierson, THE WILLIAMS FIRM, Grand Blanc, Michigan, for Appellees. **ON BRIEF:** Marshall D. Lasser, LAW OFFICE OF MARSHALL LASSER, Southfield, Michigan, for Appellants. Janet E. Lanyon, DEAN & FULKERSON, Troy, Michigan, Timothy R. Winship, THE WILLIAMS FIRM, Grand Blanc, Michigan, for Appellees.

    GIBBONS, J., delivered the opinion of the court. MOORE, J. (pp. 7-10), delivered a separate opinion concurring in part and dissenting in part. ACKERMAN, D. J. (pp. 11-12), delivered a separate concurring opinion.

---

[*] The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Plaintiffs-appellants Paul Brown, William Fanaly, Charles Thomas, Gary Riggs, Robert Orlikowski, and Scott Way ("plaintiffs") filed suit in federal district court against defendants-appellees Cassens Transport Company ("Cassens"), Crawford & Company ("Crawford"), and Dr. Saul Margules ("defendants") alleging that defendants employed mail and wire fraud in a scheme to deny them worker's compensation benefits promised under the Michigan Worker's Disability Compensation Act ("WDCA"), Mich. Comp. Laws § 418.301, and raising federal and state law claims. On defendants' motion, the district court dismissed plaintiffs' complaint for failure to state a claim on which relief could be granted. Fed. R. Civ. P. 12(b)(6).

For the reasons below, we affirm.

### I.

Plaintiffs are current or former employees of Cassens who submitted worker's compensation claims to Cassens based on injuries they claim to have sustained while performing work-related tasks. It is uncontested that Cassens, which is self-insured for purposes of paying benefits under the WDCA, contracted with Crawford to serve as a claims adjuster for the worker's compensation claims of Cassens's employees. According to plaintiffs, Cassens and Crawford deliberately selected and paid unqualified doctors, including Margules, to give fraudulent medical opinions that would support the denial of worker's compensation benefits. Plaintiffs further assert that Cassens and Crawford ignored other medical evidence demonstrating that plaintiffs' injuries were work related and thus compensable under the WDCA. Plaintiffs accuse defendants of wrongfully denying or ceasing worker's compensation benefits payable to them as a result of their injuries.

On June 22, 2004, plaintiffs filed suit against Cassens, Crawford, and Margules in federal district court, claiming violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961(1)(B), 1962(c), 1964(c). Plaintiffs asserted in their complaint that defendants sent fraudulent communications among themselves and to plaintiffs by mail and wire in violation of 18 U.S.C. §§ 1341, 1343; those allegations of mail and wire fraud constituted the predicate acts for plaintiffs' RICO claims. Plaintiffs also raised a state law claim of intentional infliction of emotional distress. Defendants moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), and, on July 15, 2005, the district court granted that motion. *Brown v. Cassens Transp. Co.*, 409 F. Supp. 2d 793 (E.D. Mich. 2005). On the same day the district court issued its dismissal order, plaintiffs filed a motion for leave to file an amended complaint. The court entered judgment in favor of defendants on July 18, 2005, and denied plaintiffs' motion to file an amended complaint on July 22, 2005.

Plaintiffs filed this timely appeal.

### II.

We review *de novo* a district court's Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted. *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). The plaintiffs' factual allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiffs. *Id.* We will not affirm the district court's dismissal of a complaint on Rule 12(b)(6) grounds "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Id.* (alteration in original) (internal quotation marks omitted).

III.

Title 18, Section 1962 of the United States Code makes it unlawful for an individual "employed or associated with an enterprise" engaged in activities relating to interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). The term "racketeering activity" includes, among other things, any act indictable under the federal mail fraud, 18 U.S.C. § 1341, or wire fraud, 18 U.S.C. § 1343, statutes. 18 U.S.C. § 1961. In addition to providing criminal penalties for certain racketeering activities, RICO provides a private right of action and treble damages for "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . ." 18 U.S.C. § 1964(c).

On appeal, plaintiffs challenge the district court's decision to dismiss their RICO claims on the ground that they failed to plead detrimental reliance on the defendants' alleged misrepresentations concerning the cause of their injuries. As plaintiffs acknowledge, the well-established precedent of this circuit requires that a civil RICO plaintiff alleging mail or wire fraud plead reliance, that is, that a defendant made fraudulent representations to the plaintiff on which the plaintiff relied. *See, e.g.*, *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 701 (6th Cir. 2000); *Cent. Distribs. of Beer, Inc. v. Conn*, 5 F.3d 181, 184 (6th Cir. 1993); *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987); *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984). Plaintiffs urge us to depart from these prior holdings and reverse the district court, proposing an alternative rule that eliminates the reliance requirement and permits a successful RICO claim based on mail or wire fraud where a plaintiff alleges that a defendant made a misrepresentation to a third person that was the proximate cause of an injury to the plaintiff. Because our precedent expressly requires a showing of reliance and thus forecloses the rule plaintiffs propose, we must affirm the district court's judgment.

In their effort to persuade us to discard the reliance requirement in our RICO jurisprudence, plaintiffs point to both Supreme Court precedent and the caselaw of our sister circuits. Neither source compels the result plaintiffs urge, however. We begin with the two decisions of the Supreme Court on which plaintiffs rely: *Neder v. United States*, 527 U.S. 1 (1999), and *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985). Plaintiffs cite the Court's decision *Neder* as support for the proposition that reliance is an inappropriate element in civil RICO actions based upon mail or wire fraud. In so doing, plaintiffs rely exclusively upon a single statement in the Court's extensive *Neder* opinion, namely, the Court's observation that the common law's requirement of justifiable reliance "plainly ha[s] no place in the federal fraud statutes." 527 U.S. at 24-25. Although plaintiffs place great emphasis on this one statement, we deem this remark insufficient to warrant a reversal of Sixth Circuit precedent. *Neder* is a criminal case that speaks to the elements of criminal bank, mail, and wire fraud under 18 U.S.C. §§ 1344, 1341, and 1343, the predicate acts for the criminal RICO charges there. *Id.* at 6. The opinion reiterates a common understanding of the elements of these federal criminal statutes over a long period of time. Indeed, the Court's passing comment reflects the law in our circuit since at least 1930, *see, e.g.*, *Hyney v. United States*, 44 F.2d 134, 136 (6th Cir. 1930), and we are aware of no court taking a contrary position.[1] *Neder* provides us with little

---

[1] *Epstein v. United States*, 174 F.2d 754, 765-66 (6th Cir. 1949), does contain language suggesting that criminal mail fraud requires that someone actually have been defrauded. However, *Epstein* is simply wrong and contrary to our prior precedent. Subsequent panels were thus under no obligation to follow it. *See Habich v. City of Dearborn*, 331 F.3d 524, 530 n.2 (6th Cir. 2003). The dissent contends that because *Bender* relied upon *Epstein*, a case we agree was in error, we may disregard all subsequent cases espousing the principle articulated in *Bender*. We disagree. Although *Epstein* may have provided a citation for the initial case outlining the reliance requirement for civil RICO claims, various panels of our court have reaffirmed the requirement. Those panels were free to impose a reliance requirement upon civil RICO plaintiffs even absent *Bender* and were doubtless aware that reliance is not required for federal criminal mail or wire fraud. The dissent's position requires us to assume that the repeated articulation of a reliance requirement in our civil RICO caselaw was the work of a court unaware of the basic principle that reliance is not an element of criminal mail

insight, however, into the proof necessary for a successful civil RICO claim. While one could reasonably conclude that the absence of reliance as an element of criminal mail and wire fraud might suggest that reliance should not be required to establish a civil RICO claim when the predicate acts alleged are mail or wire fraud, our circuit has concluded otherwise. Although we may quarrel with the soundness of that conclusion, we must acknowledge that precedent from the criminal context and *Neder* in particular do not preclude the inclusion of an additional element for a plaintiff's civil claim.

*Neder*'s irrelevance to the matter before us becomes clear upon closer review of the reliance requirement's place within the larger civil RICO jurisprudential framework. The law is clear that once a civil RICO plaintiff has made the necessary showing of a RICO violation under 18 U.S.C. § 1962, he must still meet those particular requirements imposed on private parties pursuing remedies under § 1964, including demonstrating RICO standing by showing causation. *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992) (noting that proximate causation is required to demonstrate harm "by reason of" wrongful actions); *see also Cent. Distribs. of Beer*, 5 F.3d at 184 (assuming *arguendo* that plaintiffs pled the acts of mail and wire fraud with particularity but finding summary judgment appropriate because of the absence of evidence that defendant made representations to the victim and that victim "relied on any statement or omission to its detriment"). As this court explained in *Chaz Constr., LLC v. Codell*, our cases have determined that part of RICO standing is the ability to demonstrate reliance on any alleged wrongful conduct. 137 F. App'x 735, 738 (6th Cir. 2005) (citing *Cent. Distribs.*, 5 F.3d at 184).

Nor do we find a basis for eliminating the reliance requirement in the Supreme Court's decision in *Sedima*, a case addressing a separate issue in RICO doctrine. There, the Court directed that "RICO is to be read broadly," noting Congress's "self-consciously expansive language and overall approach" and its direction that RICO "be liberally construed to effectuate its remedial purpose." *Id*. at 498. Plaintiffs insist that this general language compels a disposal of the reliance requirement in our RICO jurisprudence. We disagree. Although we recognize that the Court's statement in *Sedima* endorses a generous reading of RICO's provisions, we find no mandate for reversal of our existing precedent.

Plaintiffs also seek to rely on *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001)*,* and *Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.*, 18 F.3d 260 (4th Cir. 1994), cases in which corporate plaintiffs sought relief under RICO for fraud directed by a competitor at the plaintiffs' customers. Although the courts in both cases adopted a more expansive view of causation, permitting a RICO claim based upon mail or wire fraud directed at a third party to form the basis for a plaintiff's claim, *see* 242 F.3d at 565 and 18 F.3d at 263,[2] neither case holds, as plaintiffs suggest, that a plaintiff seeking a remedy under RICO's civil provisions is not bound to

---

and wire fraud. We are unable to embrace this assumption.

[2]Our court has explicitly rejected this approach, requiring that a plaintiff be the target of any alleged fraud. *See, e.g.*, *Cent. Distribs.*, 5 F.3d at 184 ("[T]he defendant must make a false statement or omission of fact *to the plaintiff* to support a claim of wire fraud or mail fraud as a predicate act for a RICO claim. . . . [T]he fraud connected with mail or wire fraud must involve misrepresentations or omissions flowing from the defendant to the plaintiff."). Even if our caselaw were otherwise, it would not alter the result in this case. Plaintiffs concede that their original complaint contained no allegations of reliance by a third party. On appeal, they seek to challenge the district court's July 22, 2005, denial of their motion for leave to file an amended complaint. They insist that the amended filing would have contained sufficient allegations of third-party reliance. However, plaintiffs' notice of appeal is limited to a challenge to the district court's July 15, 2005, order granting defendants' motion to dismiss. It contains no mention of the district court's July 22, 2005, order denying them leave to amend. Because plaintiffs did not properly appeal the July 22 order, we do not address the propriety of the district court's actions. Fed. R. App. P. 3(c)(1)(B) (noting that notice of appeal must "designate the judgment, order, or part thereof being appealed . . . ."); *United States v. Universal Mgmt. Servs., Inc., Corp.*, 191 F.3d 750, 756 (6th Cir. 1999) (noting the "general rule" that "[i]f an appellant . . . chooses to designate specific determinations in his notice of appeal-rather than simply appealing from the entire judgment-only the specified issues may be raised on appeal") (internal quotation marks omitted and brackets in original).

prove reliance upon any alleged fraudulent representation. Indeed, both courts seem to have maintained the necessity of proving reliance, even while allowing reliance by a third party to satisfy the requirement. *See Mid Atlantic*, 18 F.3d at 264 (deferring resolution of the reliance issue until completion of discovery); *Procter & Gamble*, 242 F.3d at 565 ("[I]f P&G's customers relied on the fraudulent rumor in making decisions to boycott P&G products, this reliance suffices to show proximate causation."); *see also Sandwich Chef of Tx, Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 222 (5th Cir. 2003) (observing that in *Procter & Gamble*, the court held that "even though Procter & Gamble had not relied on the fraud, if its customers had done so in deciding to boycott its products, this reliance could fall within the narrow exception carved out in *Summit* [*Props., Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556 (5th Cir. 2000)] and would suffice to show proximate cause"). We think it noteworthy that both the Fourth and Fifth Circuits have since expressly reaffirmed the necessity of a showing of reliance. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*. 367 F.3d 212, 233 (4th Cir. 2004); *Sandwich Chef*, 319 F.3d at 219; *see also*, *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 176 (2d Cir. 2004), *cert. granted in part*, 545 U.S. 1138 (2005), *cert. dismissed*, 126 S. Ct. 675 (2005) ("It is well established in this Circuit that where mail fraud is the predicate act for a civil RICO claim, the proximate cause element articulated in *Holmes* requires the plaintiff to show reasonable reliance.") (internal quotation marks omitted).[3]

We conclude, accordingly, that we must respect our court's precedent requiring a civil RICO plaintiff to plead his reliance upon any alleged misrepresentation when the predicate acts are mail or wire fraud. Even if we accept plaintiffs' view that our RICO jurisprudence has gone astray in imposing a reliance requirement on plaintiffs pursuing private actions under § 1964(c), our mere belief that a prior case was wrongly decided is insufficient to permit reversal of the decision of a previous panel. *See Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001). Absent a clear directive from the Supreme Court or a decision of this court sitting *en banc*, we are not at liberty to reverse this court's precedent. *Id.*

Based on the foregoing, we conclude that the district court's dismissal of plaintiffs' RICO claims was appropriate. Plaintiffs' complaint contains no allegations of reliance by them on misrepresentations by defendants,[4] and, under the law of this circuit, this omission is fatal to plaintiffs' RICO claims. We accordingly affirm the district court's grant of defendants' motion to dismiss plaintiffs' RICO claims.[5]

---

[3] As to the First Circuit's decision in *Systems Management, Inc. v. Loiselle*, 303 F.3d 100 (1st Cir. 2002), another case on which plaintiffs rely, we acknowledge that the First Circuit has taken a different approach to civil RICO liability, concluding that RICO 's terms "does not require 'reliance' by anyone," *id.* at 104, and holding that "under a literal reading of RICO–the presumptive choice in interpretation–nothing more than the criminal violation and resulting harm is required," *id.* While we believe the First Circuit's position is legitimate, as a subsequent panel applying the law of this circuit, we are not empowered to disregard our own precedent in favor of the views of other circuits.

[4] Plaintiffs' complaint does contain allegations that they relied on defendants' communications "to the extent [they] suffered the financial loss of having to pay attorney fees, medical care and medical mileage." This formulation defines plaintiffs' reliance by reference to their injury and does not constitute a claim of detrimental reliance on defendants' alleged misstatements.

[5] We need not address the alternative grounds cited by the district court as appropriate bases for dismissal, including certain plaintiffs' failure to plead fraud with the requisite particularity required under Rule 9 of the Federal Rules of Civil Procedure and the reverse preemption doctrine under the McCarran-Ferguson Act, 15 U.S.C. § 1011-15. *See Williams v. Anderson*, 460 F.3d 789, 800 (6th Cir. 2006) ("[T]his Court may affirm the district court on any ground supported by the record.").

IV.

Plaintiffs also challenge the dismissal of their state law intentional inflection of emotional distress claims. In reviewing this matter, the parties agree, we look to the law of Michigan. *See Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999). Under Michigan law, a plaintiff must show the following elements to establish an intentional infliction of emotional distress claim: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985) (internal quotation marks omitted). The Michigan Supreme Court has described "extreme and outrageous conduct" as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* at 908-09 (internal quotation marks omitted).

In *Roberts*, the Michigan Supreme Court held that a no-fault insurer's "failure . . . to facilitate the filing of a replacement services claim, a delay of at most six months in responding to the claim as filed, and the denial of benefits owed" was insufficient to meet the standard for outrageous conduct. *Id.* at 911. In arriving at this conclusion, the court noted that "[t]here is no indication that [the insurer] set out to harass these plaintiffs, nor does the evidence disclose a course of conduct that may fairly be characterized as so outrageous in character . . . as to go beyond all possible bounds of decency . . . ." *Id.* (internal quotation marks omitted).

We conclude here that the plaintiffs' allegations of defendants' fraudulent denial of worker's compensation benefits are not "so outrageous in character . . . as to go beyond all possible bounds of decency." *Id.* Decisions of the Michigan Court of Appeals confirm this conclusion. That court has explained that the "wrongful, bad faith termination of benefits, by itself, is not sufficiently outrageous to support a claim for intentional infliction of emotional distress." *Atkinson v. Farley*, 431 N.W.2d 95, 97 (Mich. Ct. App. 1988). Even the wrongful denial of worker's compensation benefits "to further some ulterior motive of the defendants," as the plaintiffs here allege, is insufficiently outrageous to support an intentional infliction of emotional distress claim under Michigan law. *Lisecki v. Taco Bell Rests., Inc.*, 389 N.W.2d 173, 175 (Mich. Ct. App. 1986). For these reasons, dismissal of the plaintiffs' intentional infliction of emotional distress claims was proper.

V.

For the reasons set forth above, we affirm the judgment of the district court.

---

### CONCURRING IN PART, DISSENTING IN PART

---

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part. I agree with the majority opinion's conclusions regarding plaintiffs' state-law claims for intentional infliction of emotional distress. I disagree, however, with the majority opinion's conclusion that civil-RICO plaintiffs must plead (and prove) reliance. Accordingly, I respectfully dissent.

I acknowledge that prior opinions of this court have stated that civil-RICO plaintiffs must plead (and then prove) reliance. *See, e.g.*, *Cent. Distribs. of Beer, Inc. v. Conn*, 5 F.3d 181, 184 (6th Cir. 1993), *cert. denied*, 512 U.S. 1207 (1994); *Blount Fin. Servs. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987); *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984). These opinions, however, are not necessarily binding precedent. To determine whether they have precedential effect, we must consider the origins of the rule requiring reliance and whether those origins comport with preexisting circuit precedent. *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (court's earliest decision on an issue remains controlling unless overruled by the court sitting en banc or unless the United States Supreme Court requires modification of the decision).

These prior panels could have reached the conclusion that reliance is an element of a civil-RICO cause of action for mail or wire fraud in only one of three possible ways: (1) they could have interpreted the text of the mail- and wire-fraud statutes; (2) they could have interpreted the text of RICO; or (3) they could have decided sua sponte to add an element. I consider these options in reverse order.

After reviewing the cases, I do not think that the prior panels sua sponte added an element to a civil-RICO claim. First, I do not believe those panels had the authority to do so. Although the majority opinion claims that the *Central Distributors*, *Blount Financial Services*, and *Bender* "panels were free to impose a reliance requirement upon civil RICO plaintiffs," Maj. Op. n.1, it cites no case in support of this proposition. Indeed, I know of no such case. The Supreme Court recently rejected a nearly identical proposition when it unanimously reversed our Circuit's adoption of pleading requirements unmoored to a statute's text. *Jones v. Bock*, --- U.S. ----, 127 S. Ct. 910 (2007). If courts are not free to impose additional *pleading requirements* that Congress did not intend, I cannot see how they legitimately can impose new *elements*. Revising legislation in such a manner is a task for Congress, not the courts, especially when the revision is as significant as adding reliance as an element. *See id.* at 926 ("[A]dopting different and more onerous pleading rules to deal with particular categories of cases should be done through established rulemaking procedures, and not on a case-by-case basis by the courts.").

Second, the *Central Distributors*, *Blount Financial Services*, and *Bender* panels apparently did not believe they were adding a new element to a civil-RICO claim. Not one of these cases identifies reliance as a newly added element. Nor do the opinions cite any cases indicating that judges of this court are free to add elements to a congressionally created cause of action (the same proposition for which the majority opinion was unable to find support). If a panel of this court were to venture into such uncharted territory, I would expect the resulting opinion to explain in detail why the panel thought it had the power to revise Congress's work by adding an element, as well as why the panel thought it prudent in that instance to do so. The above-listed opinions contain no such explanation. Considering all this, it seems highly unlikely that the panels intended to create a new element, thereby judicially amending the statute.

Similarly, these prior panels could not have been interpreting the text of the RICO statute. First, not one identifies any language in RICO (or any legislative history) indicating that Congress intended to require that civil-RICO plaintiffs prove reliance. Second, RICO's text forecloses such a requirement. To establish a civil-RICO cause of action, 18 U.S.C. § 1964(c) requires only (1) an injury to the plaintiff (2) "by reason of" a violation of § 1962.[1] As relevant here, § 1962 requires only that the plaintiff show that the defendant conducted the affairs of an enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). And "racketeering activity," in turn, is defined to include "any act which is *indictable* under . . . [18 U.S.C. §] 1341 (relating to mail fraud), [and 18 U.S.C. §] 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1)(B) (emphasis added). Nowhere does the RICO statute suggest that Congress intended to include a reliance requirement applicable to all civil-RICO claims.

After these two possibilities have been eliminated, it becomes clear that the panels in the above-listed opinions construed the mail- and wire-fraud statutes as requiring that plaintiffs prove reliance. *Bender*'s analysis demonstrates as much.

The *Bender* panel concluded that the district court properly dismissed the plaintiff's civil RICO claim because "the plaintiffs' complaint [did] not allege what misrepresentations (or omissions) of material fact Southland made to the plaintiffs *that they reasonably relied upon* to their detriment." 749 F.2d at 1216 (emphasis added). *Bender* cites a criminal mail-fraud case for this proposition, *see id.* (citing *United States v. VanDyke*, 605 F.2d 220, 225 (6th Cir.), *cert. denied*, 444 U.S. 994 (1979)),[2] which reveals that the *Bender* panel interpreted the federal mail-fraud statute to require a showing of reliance. However, prior panels of this court had held even earlier that prosecutions under the federal fraud statutes do *not* require a showing of reliance. *Norman v. United States*, 100 F.2d 905, 907 (6th Cir. 1939) (a mail-fraud offense "is complete when the scheme has been devised and when in pursuance of it, the mails have been used"); *Hyney v. United States*, 44 F.2d 134, 136 (6th Cir. 1930).

---

[1] The Supreme Court has interpreted § 1964(c)'s "by reason of" language to establish that proximate causation is an element to a civil-RICO claim. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). This decision, however, does not establish in any way a requirement that the plaintiff relied on a statement offered by the defendant.

Additionally, § 1964(c)'s requirement that a civil-RICO plaintiff have been "injured in his business or property" establishes RICO's only standing requirement. *See Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation"). Although our unpublished opinion in *Chaz Construction, LLC v. Codell*, 137 F. App'x 735 (6th Cir. 2005) (unpublished), mistakenly cited *Central Distributors* for the proposition that reliance was part of the standing inquiry in a RICO case, *id.* at 738-39, *Central Distributors* said nothing of the sort. Instead, *Central Distributors* cited *Bender* for the proposition that reliance is an *element* of a civil-RICO claim. *Cent. Distribs.*, 5 F.3d at 184. Nevertheless, *Chaz Construction* is unpublished and accordingly not binding on us.

[2] *Bender* also cites another criminal mail-fraud case, *Epstein v. United States*, 174 F.2d 754 (6th Cir. 1949). It appears that *Epstein* may have been the ultimate source of *Bender*'s assertion that reliance is required, as *VanDyke* says nothing about reliance. *VanDyke* noted that "the scheme must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." 605 F.2d at 225. Accordingly, it did not address reliance, as the quoted passage pertains only to the defendant's state of mind, whereas reliance speaks to the plaintiff's state of mind.

*Bender* cites *Epstein* for two propositions: (1) showing a "scheme to defraud" (an element of mail fraud) requires showing intent to defraud; and (2) the scheme must "accomplish[] the end designed." *Bender*, 749 F.2d at 1216 (quoting *Epstein*, 174 F.2d at 765). These propositions, taken together, were the source of *Bender*'s conclusion that reliance is required: the "end designed" could not be accomplished unless the plaintiff relied on the representations. As the majority opinion notes, *Epstein*'s position regarding accomplishment of the fraud's ultimate goal is "simply wrong and contrary to our prior precedent," and accordingly unworthy of deference. Maj. Op. n.1.

Tracing the civil-RICO precedents back to their origins in "simply wrong" decisions in criminal mail-fraud cases thus demonstrates the ultimate bankruptcy of the majority opinion's position. Even the majority itself recognizes that the genesis of the rule requiring reliance conflicts with prior precedent and accordingly should not be followed.

Although it is over seventy-five years old, this early holding—that reliance is *not* required under the federal fraud statutes—has remained constant over time.  Within the past decade, the Supreme Court has echoed this holding, noting that a reliance requirement "plainly ha[s] no place in the federal fraud statutes." *Neder v. United States*, 527 U.S. 1, 24-25 (1999).[3]  Subsequently, we have also echoed the rule of *Norman* and *Hyney*.  *United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003) (noting that *Neder* "makes it even clearer that actual reliance is not required for mail or wire fraud").  Even the majority opinion notes as much.  Maj. Op. at 3 ("we are aware of no court taking a contrary position" to the rule that the government need not establish reliance in a prosecution under the federal mail- and wire-fraud statutes).

The relevant point here is not that *Bender* was wrong (although indeed it was wrong). Instead, the point is that because the *Bender* panel interpreted the mail-fraud statute to require a showing of reliance (and then applied this requirement in a civil-RICO case), its holding created a direct conflict with *Hyney* and *Norman*, which had previously held that the federal mail-fraud statute has no reliance requirement.  Accordingly, in applying the federal mail-fraud statute through a civil-RICO action, we are bound to follow *Hyney* and *Norman*, not *Bender*.  *United States v. Abboud*, 438 F.3d 554, 567 (6th Cir. 2006) (in case of conflict between two cases, holding of the earlier case is binding); *see also* Maj. Op. n.1 (noting that when a decision contravenes prior precedent, "[s]ubsequent panels [a]re . . . under no obligation to follow it").  The fact that intervening panels have failed to follow our earliest published decision (*Hyney*) is of no moment, as no case holds that, even though one panel cannot overrule a prior panel's decision, *multiple* subsequent decisions are sufficient to undermine a prior panel's holding.  Accordingly, it is unsurprising that the majority opinion musters no support for its contention that the reliance requirement may stand, notwithstanding its origins in *Epstein*, because "various panels of our court have reaffirmed the requirement."  Maj. Op. n.1.

The prior-panel rule exists to prevent *Bender*'s unjustified departure from *Hyney* and *Norman*, not to ossify *Bender*'s error once rendered.  Because *Bender* refused to hew to our prior precedent, the criminal mail- and wire-fraud statutes mean two different things in this circuit, depending on the context.  In the criminal context, they contain no reliance element.  *E.g., Daniel*, 329 F.3d at 486.  But when Congress incorporates these statutes by reference into a civil cause of action, a reliance requirement magically appears, notwithstanding that in both contexts, *courts are interpreting the same text*.  I know of no rule of construction permitting a statute's text to take on such chameleon-like qualities.  Tellingly, the majority opinion cites none.

*Bender* was inconsistent with our precedent interpreting the mail- and wire-fraud statutes when it was decided, and this inconsistency remains today.  Yet the majority opinion continues down this errant path, rather than acknowledging the conflict with preexisting circuit precedent.  To prevent the error begun in *Bender* and extended today from snowballing any further, we should convene the en banc court to reexamine the whether a civil-RICO claim incorporates the element of reliance.  Notably, in a case in which the Supreme Court declined to decide whether a showing of reliance is required, *Anza v. Ideal Steel Supply Corp.*, --- U.S. ----, 126 S. Ct. 1991, 1998 (2006), the only Justice to address the issue (Justice Thomas) wrote separately to express his conclusion that

---

[3]The majority opinion's attempt to duck *Neder* by acknowledging that it "is a criminal case," Maj. Op. at 3, is unconvincing.  As noted above, RICO's civil provisions define the predicate acts of racketeering activity as acts *indictable* under certain federal criminal statutes, and the list specifically includes §§ 1341 and 1343.  Accordingly, *Neder* interpreted the same text that the majority opinion purports to interpret today.

reliance is not an element of a civil-RICO claim.  *Id.* at 2007-08 (2006) (Thomas, J., dissenting in part).[4]

  For these reasons, I respectfully dissent.

---

[4]Indeed, one of the judges in the majority appears to agree with this statement of the law.  *Prudential Ins. Co. of Am. v. United States Gypsum Co.*, 828 F. Supp. 287, 296 (D.N.J. 1993) ("Specific detrimental reliance is a sufficient but not necessary element of a [civil] RICO cause of action.").

---

**CONCURRENCE**

---

HAROLD A. ACKERMAN, Senior District Judge, concurring. I substantially agree with Judge Moore's conclusion in her separate opinion that RICO, properly construed, does not require that a plaintiff plead or demonstrate reliance in a civil RICO case based upon the predicate acts of mail or wire fraud. Were I considering this issue as a matter of first impression in the Sixth Circuit, I would join Judge Moore in so holding in this case. However, we do not face a blank slate on this issue in this Circuit. As the majority opinion demonstrates, this Court has consistently held that reliance is required in civil RICO fraud claims such as the claims presented here. We cannot overrule these many prior decisions absent *en banc* review, and no decision of the Supreme Court of the United States compels reversal by this panel. Therefore, while I concur with the majority opinion by Judge Gibbons, I agree with Judge Moore's exhortation that this issue should be reviewed *en banc*.

Reliance is not a required element under the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. Furthermore, although RICO requires that a claimant be injured "by reason of a violation," 18 U.S.C. § 1964(c), this causation provision does not necessitate, or even suggest, incorporation of a reliance element. The "by reason of" requirement of § 1964(c) "entails an inquiry into whether a defendant's action can be said to have proximately caused the plaintiff's injuries." *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 828 F. Supp. 287, 296 (D.N.J. 1993) (Ackerman, J.) "Specific detrimental reliance is a sufficient but not necessary element of a RICO cause of action." *Id.* Imputation of a reliance element into RICO, where neither the statute nor the predicate statutory crime requires it, runs afoul of the broad purposes of RICO. The Supreme Court, in reviewing "Congress' self-consciously expansive language and overall approach," has instructed that RICO should be "liberally construed to effectuate its remedial purposes." *Sedima, S.P.R.L. v. Imrex, Co.*, 473 U.S. 479, 498 (1985) (citations omitted). If not bound by precedent, I would join Judge Moore in rejecting a reliance requirement.

However, as the majority opinion discusses, the Sixth Circuit has expressly and repeatedly held that a plaintiff must show reliance to maintain a civil RICO claim based on mail or wire fraud. *See, e.g.*, *Cent. Distribs. of Beer, Inc. v. Conn*, 5 F.3d 181, 184 (6th Cir. 1993) (collecting cases). Most respectfully, Judge Moore's attempts to distinguish these prior cases are unavailing. While I am convinced that these cases misinterpreted RICO, this panel lacks the authority to reverse those decisions unless mandated by a subsequent, contrary decision by the Supreme Court or by *en banc* review by the entire Sixth Circuit. The Supreme Court, in *Neder v. United States*, 527 U.S. 1, 24-25 (1999), restated the longstanding principle that the federal criminal fraud statutes do not require that the Government prove reliance, but *Neder* did not work a change in the law. Long before *Neder*, the federal fraud statutes did not require reliance, and the Sixth Circuit has so recognized. *See, e.g.*, *United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir. 1994) (collecting cases). In both published and unpublished opinions issued since *Neder*, this Court has reiterated the reliance requirement. *Yax v. UPS*, 196 F. App'x 379, 381-82 (6th Cir. 2006) (unpublished opinion); *Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 738-39 (6th Cir. 2005) (unpublished opinion); *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 701 (6th Cir. 2000). In *Yax* and *Chaz Construction*, different panels of this Court explicitly rejected the argument that *Neder* somehow compels reversal of panel precedent and rejection of the reliance requirement.

As a "visiting fireman" sitting by designation on this Court, I take seriously my responsibility to apply the law of this Circuit, even if I would read the law differently. I hope that the Sixth Circuit elects, at some point in the future, to consider this issue *en banc* and reaches what I suggest is the proper conclusion that reliance need not be shown in a civil RICO case based on mail

or wire fraud.  But this panel alone cannot make such a ruling, and must instead follow established precedent in this Circuit.  Because Plaintiffs here failed to plead reliance, and because I concur with the majority opinion's conclusion that dismissal of Plaintiffs' state-law claims was appropriate, I join Judge Gibbons in affirming the district court's judgment in its entirety.