KAREN NELSON MOORE, Circuit Judge,
concurring in part and dissenting in part.
I dissent from Parts II.B.2 and II.B.3 of the majority’s opinion because I believe that the facts viewed in the light most favorable to Steward demonstrate that genuine issues of material fact exist re *645 garding whether Chrysler discriminated against her on the basis of race and disability. I concur in the judgment of Part II.B.5 but write separately to explain the grounds on which I would uphold the district court’s grant of summary judgment to Chrysler on Steward’s claim of intentional infliction of emotional distress. I concur in Part II.A of the opinion and agree that the district court did not abuse its discretion in denying Steward’s motion to dismiss her ADA claim and to remand the remainder of the case to state court. I also concur in Part II.B.l of the opinion regarding the effect of Steward’s contractual waiver, and in Part II.B.4 upholding the district court’s grant of summary judgment to Chrysler on Steward’s retaliation claim.
I. RACE-BASED CLAIMS
Viewing the facts in the light most favorable to Steward, I believe that Steward has established a prima facie case of race discrimination. The majority concludes that Steward’s claim fails on the second prong of her prima facie case — that she was subject to an adverse employment action. I cannot agree with the majority’s conclusion that Steward’s allegations are insufficient to demonstrate an adverse employment action.
To start, I disagree with the majority’s conclusion that Steward’s allegation of a racially segregated assembly line is “devoid of any factual support.” Majority Op. at 640. Steward presented deposition testimony to support her allegation that the assembly line was racially segregated— i.e., that, factually, African American employees worked at one end of the assembly line and white employees worked at the other. See, e.g., ROA at 139 (Steward Dep. at 244); id. at 260 (Thomas Dep. at 6); id. at 327 (Dunlap Dep. at 43-44). The majority first discounts Steward’s allegations because some white employees worked on the part of the line with the African American employees and Steward had a white assistant to accommodate her disability. But the fact that the line was not completely segregated by race cannot be conclusive. Otherwise, an employer could simply place one white worker with the African American workers, and vice-versa, to avoid an allegation of a segregated workforce or race-based work assignments.
The majority’s primary issue with the factual support for Steward’s allegation, however, appears to be not with respect to whether the assembly line was segregated but rather with respect to whether the segregation was at the direction of McKerley. See Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 593 (6th Cir.2007) (“An adverse employment action in the context of a Title VII discrimination claim is a materially adverse change in the terms or conditions of employment because of the employer’s actions.” (emphasis added) (internal quotation marks omitted)). Thus, the majority relies on Steward’s statements that she chose her own position on the line because of her seniority to conclude that Steward’s “assertion that McKerley ran a segregated assembly line” is unsupported. Majority Op. at 640 (emphasis added) (internal quotation marks omitted).
But Steward’s discussion of choosing her position related to particular instances when there were “open jobs on the line.” ROA at 122 (Steward Dep. at 43-44); see also id. at 366 (Steward Dep. at 279-80) (describing time around 2000-2001 when she was able to pick her job after the line was revamped). Steward recounted those instances when explaining her allegation that McKerley would change the job description of a position after she had picked it. ROA at 122, 366 (Steward Dep. at 43-44, 279-80). The majority seems to assume from Steward’s reference to those particular instances that Steward always *646 chose her position on the line without McKerley having any influence on her placement.[1] But Steward also stated in her deposition that seniority is a consideration for assignments on the line only “[i]f there is an open job, if it’s a position that calls for seniority.” Id. at 386 (Steward Dep. at 358); see also id. at 124 (Steward Dep. at 66) (responding “No,” to the question, “[W]ere these jobs at the end of the line that you are testifying about now, were they open jobs for which you bid based on seniority?”).
Steward presents other evidence that McKerley made, or at least influenced, the job assignments and that he allowed favored white employees to express preferences for jobs even when the assignments were supposed to be based on seniority.[2] Id. at 263 (Thomas Dep. at 19-21); see also id. at 328-29 (Dunlap Dep. at 48-51) (“[Steward] might be on a job for a couple of months and then [McKerley] would decide to move her somewhere else. But some of the other guys that was on the line he put them on a job and they would be stationary.”); id. at 401 (McKerley Dep. at 113-15) (discussing how people are placed on jobs). In response to the question in her deposition, “With respect to the segregated assembly line, being given more work, ... are you attributing all of that to McKerley?,” Steward responded, “[Y]es. He’s the supervisor. He has the say.” Id. at 366 (Steward Dep. at 278). Therefore, although I agree with the majority that Steward must show that McKerley had, at least in part, some decision-making authority with respect to the assignment of positions on the assembly line, I believe that a material question of fact remains regarding McKerley’s influence on Steward’s position on the line during the relevant time period.[3]
*647 Additionally, I believe that Steward alleges that she was assigned additional work during the relevant time period. See, e.g., ROA at 140 (Steward Dep. at 245-46) (“Any extra work needed to be done you can have five white guys down here sitting down reading a paper and we down there working [on the African American part of the line], [McKerley] would still come down there and tell us, well, this needs to be done or that needs to be done.” (emphasis added)); id. at 867-68 (Steward Dep. at 283-85) (discussing how “every day ” McKerley would assign her additional assignments “just to give [her] some more work to do” while his white “buddies” were reading newspapers and drinking coffee (emphasis added)).[4] Therefore, I believe that Steward has demonstrated that she was subject to an adverse employment action when McKerley constantly assigned her extra work.
For the reasons stated above, I would conclude that Steward has alleged sufficient facts to demonstrate an adverse employment action and, therefore, has alleged sufficient facts to establish a prima facie case of race discrimination.[5] Because I believe that Steward has alleged a prima facie case of race discrimination, the burden would shift to Chrysler “to put forth a legitimate, nondiscriminatory reason for the complained of adverse treatment.” Wright v. Murray Guard, Inc., 455 F.3d 702, 706 (6th Cir.2006) (internal quotation marks omitted). Chrysler has failed to present evidence of a legitimate, nondiscriminatory reason for Steward’s alleged segregation in job assignments and assignments of additional work.[6] Instead, Chrysler simply asserts that Steward has not established a prima facie case of discrimination because no adverse employment action was taken against her, because her complaints were not causally *648 connected to race, and because her conclu-sory opinions are not evidence of discrimination. In concluding that Steward has established a prima facie case, I have rejected Chrysler’s arguments.
Because Steward has alleged a prima facie case of discrimination and Chrysler has not met its burden of producing a nondiscriminatory explanation, a presumption of discrimination remains, and Steward should be able to proceed with her race-discrimination claim. Id. at 706-07; see also Sniecinski v. Blue Cross & Blue Shield of Mich., 469 Mich. 124, 666 N.W.2d 186, 193-94 (2003). Accordingly, I would reverse the district court’s dismissal of Steward’s race-based claim.
II. DISABILITY-BASED CLAIMS
I also believe that Steward has established a prima facie case of disability discrimination when viewing the facts in a light most favorable to her. Steward has identified a number of employees with less seniority than herself who have similar job restrictions and who have been accommodated in a variety of jobs at Chrysler that she would be able to perform.[7] She also asserts that she could continue to perform her old job with an assistant as she did for a few months before her layoff. In response, Chrysler argues that it can no longer provide Steward with an assistant because its budget will not allow it to pay two people to do a single job and that it has reviewed its job openings since Steward’s layoff and it has not found a vacancy that fits her work restrictions and seniority rights. ROA at 179 (Clark Aff. at 2).
However, Chrysler also responds that it prioritizes the accommodation of workers with work-related disabilities. Chrysler Br. at 11, 37, 43; see also ROA at 182 (Gupte Dep. at 33-34) (“The primary consideration was that we gave priority to individuals who had work related [restrictions] only.”); ROA at 190 (Clark Dep. at 44) (“HR Policy, if it’s [ ] workman’s compensation], then we are to try to accommodate that person if possible. If it’s not workman’s compensation], then the corporation is not responsible to accommodate the extra cost [of an additional person to help].”). Chrysler further explains that it has determined that Steward’s disability is not work related and that she is therefore not entitled to jobs similar to those that it has created or found for occupationally injured employees. Even assuming that Chrysler is correct in its argument that it may prioritize the accommodation of occupationally injured employees, an issue on which I express no opinion at this time, I conclude that questions of material fact remain. First, the record reveals conflicting evidence regarding whether Steward was injured on the job. Although Chrysler asserts, without explanation, that it has determined that Steward’s injuries are not occupationally related, Steward has presented evidence that her injuries are job related. Steward’s deposition testimony outlines her injuries, and she clearly argues that all of her injuries happened on *649 the job. ROA at 133, 372-73, 376-78 (Steward Dep. at 169, 304, 306, 317-27). Steward’s doctor also testified that her job likely caused and/or contributed to her injuries. Id. at 169-70 (Obayan Dep. at 14-19). Although the parties have not focused on the issues, the source of Steward’s injury is a material fact. Additionally, the record does not reveal, for example, how Chrysler makes its determination that employees have been injured on or off the job or whether there is any review process. If Steward can show that her injury is job related, then Chrysler’s argument that she has not been accommodated at the plant because her injury is not job related must fail.
Finally, Chrysler asserts that laying off Steward and providing her with sub-pay is a reasonable accommodation. I decline to adopt this position. Steward is not receiving full pay or benefits, nor is she working. Accordingly, Chrysler has not accommodated Steward by providing her with a job that she can perform, and Steward’s disability claims should not have been dismissed on summary judgment.
III. CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
For the reasons stated below, I agree with the majority’s conclusion that the district court did not err in granting Chrysler summary judgment with respect to Steward’s claim of intentional infliction of emotional distress. As the majority states, the Michigan Supreme Court has not formally recognized the tort of intentional infliction of emotional distress. See Brown v. Cassens Transp. Co., 546 F.3d 347, 363-64 (6th Cir.2008), cert. denied, — U.S.-, 130 S.Ct. 795, 175 L.Ed.2d 575 (2009); Smith v. Calvary Christian Church, 462 Mich. 679, 614 N.W.2d 590, 595 (2000) (Weaver, C.J., concurring). Michigan appellate courts that have recognized the tort have identified the following elements: ‘ (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.” Linebaugh v. Sheraton Mich. Corp., 198 Mich.App. 335, 497 N.W.2d 585, 588 (1993); see also Brown, 546 F.3d at 363-64. The district court found that Steward had not sufficiently alleged these elements in part because she did not allege that Chrysler knew about or permitted McKerley to continue the alleged conduct. In light of the body of Michigan cases, I conclude that Steward has failed to bring forth sufficient evidence to support this claim. I would affirm the district court’s dismissal of Steward’s claim of intentional infliction of emotional distress on that ground. For the reasons stated above in Part I, I do not agree that Steward failed to support factually her allegation that McKerley ran a racially segregated assembly line, and therefore I do not agree with the majority’s dismissal of Steward’s IIED claim on that ground.
IV. CONCLUSION
Viewing the facts in the light most favorable to Steward, I believe that Steward has established a prima facie case of both race and disability discrimination. With respect to her race-discrimination claim, I believe that Steward has demonstrated that she was subject to an adverse employment action when McKerley assigned her additional work and that a question of material fact remains regarding whether McKerley influenced her placement on the segregated assembly line. With respect to her disability-discrimination claim, I believe that a question of material fact remains regarding whether Steward’s injury is job related. Therefore, I respectfully dissent from the dismissal of Steward’s race- and disability-discrimination claims.

. The majority’s assertion that Steward made "clear statements as to picking her own job during the relevant time period ” is puzzling. Majority Op. at 634 n. 3 (emphasis added); see also id. at 633 (citing ROA at 122, 366). In the two instances that she made such statements, she clearly identifies one as relating to the time period around 2000-2001, ROA at 366 (Steward Dep. at 280), and she does not identify the time period of the other, ROA at 122 (Steward Dep. at 43-45).

. Despite its reliance on statements by Steward that are not time-identified to the relevant time frame, see supra note 1, the majority dismisses other evidence in the record relating to how positions on the line are filled because the evidence is not explicitly identified to the relevant time frame. Majority Op. at 634 n. 3. The record does not suggest that the practice for filling positions changed materially over the course of Steward's employment at Chrysler such that evidence speaking to the practice generally would not be applicable for the relevant post-February 2005 time period. Furthermore, in response to the question whether, "[a]t any period in time,” he intentionally set up the line to segregate employees on the basis of race, McKerley responded with a description of how he “place[s] people on jobs according to need and basic requirements to get the job done,” with seniority also being a factor. ROA at 400-01 (McKerley Dep. at 112-13). Chrysler also argues that "Steward’s assignment in 2005 was an attempt to accommodate her restrictions,” Chrysler Br. at 30 (emphasis added), suggesting that her position on the line during the relevant time period was one that was assigned to her rather than the result of her own choice. I therefore disagree with the majority’s assertion that this evidence cannot be considered with respect to the question of whether McKerley influenced the placement of workers on the line.

.I believe that the claim of a segregated workforce, when supported by evidence that the employer exercises at least some discretion over job placements, is sufficient to demonstrate a prima facie case for race discrimination. See, e.g., Mich Comp. Laws § 37.2202(l)(b) (prohibiting employers from "segregat[ingj” an employee "for employment in a way that deprives or tends to deprive the employee ... of an employment opportunity, or otherwise adversely affects the status of an employee ... because of ... race”); Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C. *647 § 2000e-2(a)(2) (same); United Steelworkers v. Weber, 443 U.S. 193, 208, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979) (stating that Title VII was "designed to break down old patterns of racial segregation and hierarchy"); EEOC Compliance Manual § 618.3(a) (2003) (stating that "a prima facie case of discrimination would be established if the employer had a policy of assigning Blacks to one section of the plant and Whites to another, or women to one production line and men to another” and that "[t]he same is also true if the employer has no policy, but nonetheless Blacks are assigned to only one section of the plant, or women are assigned to only one production line”).

.The majority rejects these allegations because it concludes they are also not identified to the relevant time period. Majority Op. at 634 n. 3. However, viewing the facts in the light most favorable to Steward, which we must do at summary judgment, I believe that Steward’s statement that McKerley’s assignment of additional work "was something that was going on every day ” is sufficient to place it in the relevant time frame. ROA at 367-68 (Steward Dep. at 283-85).

. Steward has also sufficiently established the first, third, and fourth prongs of her prima facie case: Steward is an African American; Steward was laid off because of her disability-based work restrictions, not because she was not qualified for the job; and her testimony and the testimony of her coworkers sufficiently establishes that McKerley treated African Americans more poorly than white employees with respect to placement on the assembly line and the assignment of additional work.

. Although Chrysler makes the statement in support of its argument that Steward has not established a prima facie case of race discrimination, Chrysler's assertion that “Steward's assignment in 2005 was an attempt to accommodate her [disability] restrictions,” Chrysler Br. at 30, could be construed as a legitimate, nondiscriminatory reason for her job assignment in the relevant time period. It is not clear, however, whether Steward's assignment on the line at that time was chosen to accommodate her restrictions. The record shows that, rather than moving Steward to another position as an accommodation, Chrysler chose to provide an extra person to assist her in completing the job. ROA at 128 (Steward Dep. at 141).

. The majority suggests that Steward did not satisfy her burden of requesting the accommodation that she now seeks. Majority Op. at 642 ("However, she has not come forward with evidence that she contemporaneously requested that Chrysler assign her to any specific [clerical or other position involving nonphysical labor].”); id. (emphasizing that Steward’s evidentiary burden includes actually requesting a particular position). Chrysler, however, does not challenge whether Steward requested to be assigned to the types of jobs that she now seeks as accommodation; rather, it argues that "Steward has only pointed to jobs already held by other employees and that were provided to those restricted employees based upon the fact that, unlike Steward, their restrictions were determined to be work-related....” Chrysler Br. at 43. I would therefore restrict the analysis to whether any appropriate positions were available at the relevant time.